HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 1, 2, 8, and 9 in appellant's application for a patent for an alleged invention relating to improvements in a "constant—level tobacco—feed for cigarette machines," and particularly to a mechanism for maintaining tobacco in the hopper of a tobacco feeding machine at a substantially uniform level.

Claim 1 is illustrative. It reads: "1. In a tobacco feed, the combination with a device for feeding a stream of tobacco from a magazine, of mechanism for intermittently delivering quantities of tobacco to said magazine, and means for variably measuring and regulating at will the amount of tobacco delivered by said mechanism to that fed from the magazine."

The reference is Ruau, 1,501,622, July 15, 1924.

As stated in the involved claims, appellant provides a device for feeding tobacco from a magazine into a hopper and a mechanism for intermittently delivering quantities of tobacco to the magazine, and means for "variably measuring and regulating at will the amount of tobacco delivered by said mechanism to that fed from the magazine."

The patent to Ruau relates to a tobacco feeding apparatus for cigarette machines. The patentee discloses an endless conveyor provided with pockets for intermittently delivering quantities of tobacco to the hopper. The conveyor is automatically started or stopped by a filler head in contact with the tobacco in the hopper. When the level of the tobacco in the hopper falls below a predetermined level, the filler head operates a clutch to start the operation of the conveyor. When the level of the tobacco in the hopper rises above the predetermined level, the filler head disengages the clutch and the conveyor is stopped. The patentee depended upon the rise and fall of the tobacco level in the hopper to control the starting and stopping of his conveyor feed. He did not disclose any means for variably measuring and regulating at will the quantities of tobacco delivered by the conveyor feed.

The Board of Appeals held that if the conveyor of the patentee delivered the tobacco at an undesirable rate, a mere adjustment of the speed of the conveyor, or a mere change in the size of the pockets thereon, would accomplish the same results as those obtained by appellant's device; that is to say, by merely dispensing with the filler head and its clutch operating rod and their functions, and regulating the speed of the conveyor or increasing the size of the pockets thereon, the amount of the tobacco in the hopper could be maintained at a substantially uniform level. Such a modification of the Ruau device, it was held, would not amount to invention.

Appellant was allowed several claims, which specifically define his device. However, the appealed claims are so broad as to read upon the references as changed or adjusted as hereinbefore stated. We are of opinion that such changes or adjustments would not involve invention, but would be obvious to one of ordinary mechanical skill.

The decision is affirmed.

Affirmed.

In re RETZBACH et al.
Patent Appeal No. 2906.

Court of Customs and Patent Appeals.
April 4, 1932.

John H. Bruninga, of St. Louis, Mo. (Chas. E. Riordon, of Washington, D. C., of counsel), for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims in appellants' application for a pat-

ent for an alleged invention relating to a process for making frozen confections, particularly chocolate covered ice cream bars.

Claims 2, 16, 28, and 38 are illustrative. They read:

"2. In the art of making frozen confections, the process comprising flowing semifrozen ice cream into a candy shell and chilling the filled shell so as to harden the ice cream therein."

"16. In the art of making frozen confections, the process comprising, filling a candy shell with layers of semifrozen ice cream and chilling the filled shell so as to harden the ice cream therein."

"28. In the art of making frozen confections, the process comprising, placing a candy shell in an envelope, filling the shell with semifrozen ice cream, and chilling the filled shell in the envelope so as to harden the ice cream therein."

"38. In the art of making frozen confections, the process comprising, placing a candy shell in a lined box, filling the shell with semifrozen ice cream, and chilling the filled shell in the box so as to harden the ice cream therein."

The references are: Rosenberger, 502,-864, August 8, 1893; Cuscaden et al., 682,-243, September 10, 1901; Boyd, 1,138,929, May 11, 1915; Boyd, 1,200,705, October 10, 1916; Bausman, 1,276,006, August 20, 1918; Dalton, 1,313,793, August 19, 1919; Nelson, 1,404,539, January 24, 1922; Brigham, 1,417,446, May 23, 1922; Gereke, 1,437,512, December 5, 1922; Harlan, 1,475,579, November 27, 1923.

The claimed process is sufficiently defined in the quoted claims.

The patents to Rosenberger, Bausman, and Boyd disclose methods of making candy by first forming a candy shell, filling it with a plastic candy cream, and then sealing it. The patent to Bausman and the Boyd patent, No. 1,138,929, disclose the additional step of cooling the shells and the cream centers before sealing.

The patent to Dalton disclosed the method of filling cartons with semifrozen ice cream, and thereafter chilling it until hardened.

The patent to Nelson shows that it was old to make a confection by covering ice cream with a chocolate coating.

In view of those patents, the board held that the process defined in claims 1, 2, 3, 8, 10, and 12 was clearly suggested by the references, and did not involve invention.

Claims 16, 18, and 19 include the additional feature of depositing the ice cream in layers. However, as the patents to Dalton and Cuscaden et al. disclosed it to be old to mold bricks composed of different flavored ice creams, the Board held these claims to be unpatentable.

Claims 28, 32, and 35 include the additional feature of placing the candy shell in an envelope before filling it with semifrozen ice cream. This feature being old, as disclosed in the patents to Harlan and Brigham, these claims were held to be devoid of invention.

Claims 38 and 41 include the additional feature of placing the candy shell in a lined box before filling it with ice cream. In view of the fact that the patent to Gereke showed it to be old to bake plastic dough in a shell of cardboard having a lining of parchment, or other suitable material, these claims were held to be unpatentable in view of the other references of record.

It is contended by counsel for appellants that the involved process of producing candy coated ice cream bars is new; that improved results have been secured by it; and that therefore appellants are entitled to a patent.

We are unable to concur in the views expressed by counsel for appellants.

Each step in the alleged novel process is shown by the references to be old. Furthermore, the involved process and its application to the production of candy coated ice cream bars is plainly suggested by the references. Accordingly, we are of opinion that the tribunals of the Patent Office reached the right conclusion, and the decision of the Board of Appeals is affirmed.

Affirmed.